IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| United States of America, | ) | |
| --- | --- | --- |
| | ) | Criminal No.: 0:17-cr-01142-JMC-1 |
| | ) | |
| v. | ) | |
| | ) | |
| DeMarco McDow, | ) | **ORDER AND OPINION** |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the court for review are Defendant DeMarco Dow's ("Defendant") objections to the Presentence Investigation Report ("PSR") filed on September 24, 2018.[1] (ECF No. 43.) The court overrules Defendant's first objection.

## I. INTRODUCTION

On June 25, 2018, Defendant pleaded guilty to being a felon in possession of a firearm. (ECF Nos. 38, 42.) On September 24, 2018, the PSR was filed. (ECF No. 39.) The PSR indicates that on July 18, 2017, Defendant pleaded guilty as indicted to Possession with Intent to Distribute Cocaine Base.[2] (ECF No. 48 at 10 ¶ 29.) The PSR found that this conviction "is considered a controlled substance offense for purposes of U.S.S.G. § 2K2.1(a)," (*id.*), and that as a result, Defendant's base offense level is twenty (20). (*Id.* at 12–13 ¶ 43.) The PSR recommends Defendant's "Total Offense Level" is seventeen (17) after applying reductions for accepting responsibility. (*Id.* at 13 ¶¶ 50–51.) Finally, the PSR concludes that, "Based upon a

---

[1] The PSR was amended and refiled on November 27, 2018, to reflect Defendant's objections. (ECF No. 48.)
[2] According to the PSR, Defendant was indicted for "possess[ing] with intent to distribute, dispense, or deliver cocaine base (crack cocaine) in violation of Section 44-53-375, of the Code of Laws of South Carolina." (ECF No. 48 at 10 ¶ 29.)

1

total offense level of 17 and a criminal history category of IV, the guideline imprisonment range is 37 months to 46 months." (*Id.* at 15 ¶ 69.) Defendant "objects to the [PSR] increasing his base offense level from a 14 to a 20 based on" his prior South Carolina conviction for Possession with Intent to Distribute Cocaine Base. (ECF No. 48-1 at 1.)

Section 2K2.1(a)(4)(A) of the United States Sentencing Guidelines ("Guidelines") provides for a base offense level of 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or *a controlled substance offense*." (emphasis added). A "controlled substance offense" is defined under the Guidelines as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b). The commentary to U.S.S.G. § 4B1.2 further defines a controlled substance as including the offenses of "aiding and abetting, conspiring, and attempting to commit" the above offenses. *Id.* at cmt. 1.

When determining whether a prior state conviction qualifies as a "controlled substance offense" under the Guidelines, the court "approach[es] the issue categorically, looking 'only to the fact of conviction and the statutory definition of the prior offense.'" *United States v. Cabrera–Umanzor*, 728 F.3d 347, 350 (4th Cir. 2013) (quoting *Taylor v. United States*, 495 U.S. 575, 602, (1990)); *McNeill v. United States*, 563 U.S. 816, 820 (2011) ("The only way to answer this backward-looking question is to consult the law that applied at the time of that conviction."). "The categorical approach focuses on the *elements* of the prior offense rather than the *conduct* underlying the conviction." *Id.* To apply the categorical approach, the court "compar[es] the

elements of the underlying offense to the federal definition." *United States v. Walker*, 858 F.3d 196, 198 (4th Cir. 2017). *See also Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) ("The comparison of elements that the categorical approach requires is straightforward when a statute sets out a single (or 'indivisible') set of elements to define a single crime. The court then lines up that crime's elements alongside those of the generic offense and sees if they match."). If the elements of the underlying offense "sweep[] more broadly" than the federal definition, "a conviction under that law cannot count" as a controlled substance offense. *Descamps v. United States*, 570 U.S. 254, 261 (2013).

At the time Defendant was sentenced, section 44-53-375(B) of the South Carolina Code Ann. (2017) provided,

> A person who manufactures, distributes, dispenses, delivers, purchases, or otherwise aids, abets, attempts, or conspires to manufacture, distribute, dispense, deliver, or purchase, or possesses with intent to distribute, dispense, or deliver methamphetamine or cocaine base, in violation of the provisions of Section 44-53-370, is guilty of a felony and, upon conviction:
>
> (1) for a first offense, must be sentenced to a term of imprisonment of not more than fifteen years or fined not more than twenty-five thousand dollars, or both;
>
> (2) for a second offense, the offender must be imprisoned for not less than five years nor more than thirty years, or fined not more than fifty thousand dollars, or both;
>
> (3) for a third or subsequent offense, the offender must be imprisoned for not less than ten years nor more than thirty years, or fined not more than fifty thousand dollars, or both.

When faced with a statute like this, the sentencing court must first determine whether the statute is "divisible" or "indivisible." A divisible statute "sets out one or more elements of the offense in the alternative." *Descamps*, 570 U.S. at 257. An indivisible statute "creates an implied list of every means of commission that otherwise fits the definition of a given crime."

3

*United States v. Hemingway*, 734 F.3d 323, 334 (4th Cir. 2013) (quoting *Descamps*, 570 U.S. at 271). Put another way,

> The first task for a sentencing court faced with an alternatively phrased statute is . . . to determine whether its listed items are elements or means. If they are elements, the court should do what we have previously approved: review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction, and then compare that element (along with all others) to those of the generic crime. But if instead they are means, the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution.

*Mathis*, 136 S. Ct. at 2256 (citation omitted). Thus, if the statute lists *means*, or is *indivisible*, the categorical approach applies. But, if the statute list *elements*, and is *divisible*, the modified categorical approach applies. *See United States v. Vinson*, 794 F.3d 418, 430 (4th Cir. 2015) ("Because the offense is divisible, the modified categorical approach is applicable."); *Omargharib v. Holder*, 775 F.3d 192, 198 (4th Cir. 2014) ("After *Descamps*, we may apply the modified categorical approach only if the state crime at issue is divisible."); *United States v. Marshall*, No. 16-4594, 2018 WL 4150855, at *8 (4th Cir. Aug. 29, 2018) ("When a state statute is 'divisible,' however, we apply the modified categorical approach, which enables us to compare the elements of the state and federal generic offenses."). If "the statute is 'divisible'—*i.e.*, comprises multiple, alternative versions of the crime—a later sentencing court cannot tell, without reviewing something more, if the defendant's conviction was for" a version of the crime that meets the federal definition, and therefore, qualifies for a sentencing enhancement. *Descamps*, 570 U.S. at 262. Under the modified categorical approach, "the sentencing court may . . . consult certain approved 'extra-statutory materials . . . to determine which statutory phrase was the basis for the conviction." *United States v. Cabrera-Umanzor*, 728 F.3d 347, 350 (4th Cir. 2013) (quoting *Descamps*, 570 U.S. at 256). However, "As the Supreme Court emphasized . . . the modified categorical approach, 'serves a limited function: It helps effectuate the

4

categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction.'" *Id.* (quoting *Descamps*, 570 U.S. at 260).

Defendant argues that because section 44-53-375(B) can be violated by *purchasing* cocaine, it "does not meet the guideline definition of a controlled substance offense, as defined by U.S.S.G. § 4B1.2(b)." (ECF No. 48-1 at 1–2.) Defendant asserts section 44-53-375(B) "sets out a list of ways a defendant can violate [it]. Because th[is] statute sets out a single crime, a drug violation, that can be committed a number of different ways, [it] is not divisible. (*Id.* at 2.) Thus, Defendant argues, "Under the categorical approach, [section 44-53-375(B)] do[es] not qualify as a predicate offense[] under [U.S.S.G.] § 4 B1.2['s] definition of a 'controlled substance offense.'" (*Id.*)

Alternatively, Defendant argues that even if the court finds the modified categorical approach applies, the court should not rely on sentencing sheets to determine whether the offense Defendant pleaded guilty to meets the federal definition for a controlled substance offense. (*Id.* at 3.) Defendant asserts that his sentencing sheet refers to a statute of conviction—section 44-53-375—which prohibits the purchase of cocaine, and Defendant pleaded guilty "as indicted." (*Id.*) Because the sentencing sheet refers to the statute, Defendant contends it is not an appropriate basis for determining whether his conviction meets the definition for a controlled substance offense. (*Id.*)

The PSR asserts that S.C. Code Ann. § 44-53-375 is divisible, and therefore, the modified categorical approach applies. (ECF No. 48-1 at 4–6.) The PSR relies on the Fourth Circuit's unpublished opinions in *United States v. Vinson*, 340 F. App'x 882, 883 (4th Cir. 2009) ("Vinson claims that because the South Carolina statute under which he was convicted also criminalizes

5

the purchase of drugs, the district court needs to look beyond the statute to evaluate Vinson's conduct. We disagree."); *United States v. Marshall*, No. 16-4594, 2018 WL 4150855, at *8 (4th Cir. Aug. 29, 2018) ("[W]e conclude that South Carolina Code §§ 44-53-370 and 445 set forth alternative elements, and that, therefore, the statutes are subject to review under the modified categorical approach."); *United States v. Rhodes*, 736 F. App'x 375, 379 (4th Cir. 2018) (assuming for purposes of the appeal that S.C. Code Ann. § 44-53-445(A) (2003) is divisible); and *United States v. Sulton*, 740 F. App'x 45, 46 (4th Cir. 2018) ("We conclude that [South Carolina Code § 44-53-375(B)] is divisible because, on its face, it criminalizes multiple, different actions taken with respect to methamphetamine, and nothing in the statutory text states or suggests that the enumerated actions are alternative ways to commit an element of a single offense rather than alternative offenses."); and the Fifth Circuit's decision in *United States v. Rodriguez-Negrete*, 772 F.3d 221, 225–27 (5th Cir. 2014) (applying the modified categorical approach to 44-53-370(a)(1)). (*Id.*)

## II. ANALYSIS

### A. <u>Divisibility of S.C. Code Ann. § 44-53-375(B)</u>

To determine whether the actions listed in an alternatively phrased statute, like section 44-53-375(B), are elements or means, the Supreme Court directs sentencing courts to consider state court decisions and the statute itself. *Mathis*, 136 S. Ct. at 2256. Specifically, the *Mathis* Court instructs sentencing courts to consider whether the "statutory alternatives carry different punishments," or whether the statute "identif[ies] which things must be charged." *Id.* "[I]f state law fails to provide clear answers," *Mathis* authorizes federal judges to look to "the record of a prior conviction itself," namely the indictment and the jury instructions. *Id. See id.* at 2257 ("Conversely, an indictment and jury instructions could indicate, by referencing one alternative

6

term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime.").

Keeping with *Mathis*, this court must first determine whether section 44-53-375(B) lists elements or means. The language and structure of section 44-53-375(B), and several decisions of the South Carolina Supreme Court and Court of Appeals, lead the court to conclude that the "numerous forms of conduct" listed in section 44-53-375(B) are means as opposed to elements. *State v. Miles*, 805 S.E.2d 204, 208 (S.C. Ct. App. 2017) ("Section 44-53-370 is concerned with criminalizing numerous forms of conduct involving illegal drugs.").

Initially, the court finds section 44-53-375(B) is at least divisible by three. In *State v. Brown*, the appellant was convicted of "possession with intent to distribute crack cocaine, possession with intent to distribute crack cocaine within proximity of a school, distribution of crack cocaine, and distribution of crack cocaine within proximity of a school." 461 S.E.2d 828, 829 (S.C. Ct. App. 1995). The South Carolina Court of Appeals found distribution and possession with intent to distribute were different crimes stating, "We wish to emphasize that there is no prohibition against the contemporaneous prosecution by the State for both possession with intent to distribute and distribution of crack cocaine and the related school charges where, like this case, they arise out of the same conduct." *Id.* at 832. *See also id.* at 831 ("In South Carolina, the *offenses* of distribution of crack cocaine and possession of crack cocaine with the intent to distribute are statutory *crimes*, found in S.C. Code Ann. Section 44–53–375(B) (Supp. 1994)." (emphasis added)). This statement supports the conclusion that section 44-53-375(B) is at least divisible by three, as possession with intent to distribute is a separate offense from distribution under *Brown*. *See also Marshall*, 2018 WL 4150855, at *8 ("Courts in South Carolina treat the purchase of a controlled substance as a distinct crime from possession with

intent to distribute under Section 44-53-370."); *State v. Watson*, No. 2013-UP-312, 2013 WL 8538756, at *2 (S.C. Ct. App. July 3, 2013) ("South Carolina law regards simple possession as a lesser-included offense of PWID[, possession with intent to distribute,] heroin but not of purchasing heroin. By requiring the jury to address PWID heroin and purchasing heroin separately, the trial court ensured the jury (1) understood the lesser-included relationship existed only between simple possession and PWID heroin and (2) examined the evidence of purchasing heroin separately.").

As to conspiracy under section 44-53-375(B), in *Harden v. State*, the South Carolina Supreme Court explained, "Conspiracy is a separate offense from the substantive offense, which is the object of the conspiracy. A defendant may be separately indicted and convicted of both the conspiracy, and the substantive offenses committed in the course of the conspiracy." 602 S.E.2d 48, 50 (S.C. 2004). Also, conspiracy under section 44-53-375(B) carries a different punishment than the other two crimes. At the time of Defendant's conviction, section 44-53-420 of the South Carolina Code Ann. (2017) provided that,

> [A] person who attempts or conspires to commit an offense made unlawful by the provisions of this article shall, upon conviction, be fined or imprisoned in the same manner as for the offense planned or attempted; but the fine or imprisonment shall not exceed one half of the punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

*See also State v. Fowler*, 289 S.E.2d 412, 413 (S.C. 1982) ("[Under S.C. Code Ann. § 44-53-420,] [t]he maximum sentence for conspiracy to commit a drug offense is one-half of the maximum punishment for the offense which was the object of the conspiracy.").

Additionally, the court notes that section 44-53-375(B) repeats the terms "manufacture, distribute, dispense, deliver, [and] purchase," which is significant because as the statute repeats these terms, it modifies them with different phrases. The second repetition of these terms is

8

modified by the words "aid, abet, attempt, or conspire to." S.C. Code Ann. § 44-53-375(B)(201). The third repetition of the terms "distribute, dispense, or deliver" is modified by the phrase "possess with intent to." *Id.* "[A]id, abet, attempt, or conspire to" and "possess with intent to" must be modifications because if they are not read in conjunction with the repeated terms, parts of the statute would be nonsensical. For example, if "aid" stood alone, the statute would make it unlawful to "aid . . . a controlled substance or a controlled substance analog." *Id.* The same would be true if "aid, abet, attempt, or conspire to" are read together, but not as modifiers; in that case, the statute would make it unlawful to "aid, abet, attempt, or conspire to . . . a controlled substance or a controlled substance analog." *Id.* As these readings of the statute make no sense, "aid, abet, attempt, or conspire to" and "possess with intent to" must modify the terms "manufacture, distribute, dispense, deliver, [and] purchase." *See Lancaster Cty. Bar Ass'n v. S.C. Comm'n on Indigent Def.*, 670 S.E.2d 371, 373 (S.C. 2008) ("In construing a statute, this [c]ourt will reject an interpretation when such an interpretation leads to an absurd result that could not have been intended by the legislature."). These structural features strongly suggest that manufacturing, distributing, dispensing, delivering, or purchasing methamphetamine or cocaine base is distinct from possessing with the intent to distribute, dispense, or deliver methamphetamine or cocaine base.

Accordingly, the court finds section 44-53-375(B) defines at least three different crimes, making it unlawful to: (1) "manufacture, distribute, dispense, deliver, [or] purchase . . . methamphetamine or cocaine base"; (2) "aid, abet, attempt, or conspire to manufacture, distribute, dispense, deliver, or purchase . . . methamphetamine or cocaine base"; and (3) "possess with intent to distribute, dispense, or deliver methamphetamine or cocaine base."

    a. **Divisibility of Manufacture, Distribute, Dispense, Deliver, and Purchase**

9

Therefore, having concluded that section 44-53-375(B) defines at least three different crimes, the court considers the issue raised by Defendant's objection: whether manufacture, distribute, dispense, deliver, and purchase are *elements* or *means*. *See United States v. Cabrera-Umanzor*, 728 F.3d 347, 352 (4th Cir. 2013) ("General divisibility, however, is not enough; a statute is divisible for purposes of applying the modified categorical approach only if at least one of the categories into which the statute may be divided constitutes, *by its elements*, a crime of violence.").

To make this determination, the court, following *Mathis*, first looks to whether the statutory alternatives carry different punishments. *See* 136 S. Ct. at 2256 ("If statutory alternatives carry different punishments, then under *Apprendi*[*v. New Jersey*, 530 U.S. 466 (2000),] they must be elements."). The statutory alternatives listed in section 44-53-375(B) do not carry different punishments; nowhere in the statute is there a variance in sentence based upon whether a person manufactures, distributes, dispenses, delivers, or purchases a controlled substance. *See* S.C. Code Ann. § 44-53-370(a)(1) (2002). What affects a person's sentence under section 44-53-375(B) is the *number of offenses* under the section. For example, under section 44-53-375(B)(1),

> A person who manufactures, distributes, dispenses, delivers, purchases, or otherwise aids, abets, attempts, or conspires to manufacture, distribute, dispense, deliver, or purchase, or possesses with intent to distribute, dispense, or deliver methamphetamine or cocaine base, in violation of the provisions of Section 44-53-370, is guilty of a felony and, upon conviction:
>
> (1) for a *first offense*, must be sentenced to *a term of imprisonment of not more than fifteen years or fined not more than twenty-five thousand dollars, or both*;

(emphasis added). But, under section 44-53-375(B)(2),

10

> (2) for a *second offense*, the offender must be *imprisoned for not less than five years nor more than thirty years, or fined not more than fifty thousand dollars, or both*;

(emphasis added). Finally, under section 44-53-375(B)(3),

> (3) for a *third or subsequent offense*, the offender must be *imprisoned for not less than ten years nor more than thirty years, or fined not more than fifty thousand dollars, or both.*

Thus, under section 44-53-375(B) a person who manufactures methamphetamine or cocaine base is subject to the same punishment as someone who purchases methamphetamine or cocaine base, which indicates that under section 44-53-375(B), manufacture, distribute, dispense, deliver, and purchase are means, not elements. *See Mathis*, 136 S. Ct. at 2256 ("If statutory alternatives carry different punishments, then under *Apprendi* they must be elements.")

In addition to considering the "statute on its face," the *Mathis* Court also directed sentencing courts to consider state court decisions. *See* 136 S. Ct. at 2256 ("The listed premises in Iowa's burglary law, the State Supreme Court held, are 'alternative method[s]' of committing one offense, so that a jury need not agree whether the burgled location was a building, other structure, or vehicle. When a ruling of that kind exists, a sentencing judge need only follow what it says." (citation omitted)). Unfortunately, there is no "ruling of that kind" from the South Carolina courts on whether manufacture, distribute, dispense, deliver, and purchase under section 44-53-375(B) are means or elements. But there are several decisions, perhaps of a different kind, that do provide the court with a clear enough answer.

The most direct evidence from the South Carolina courts that under section 44-53-375(B) manufacture, distribute, dispense, deliver, and purchase are means and not elements, comes from the South Carolina Supreme Court in *State v. Raffaldt*, 456 S.E.2d 390, 394 (S.C. 1995). In describing the jury instructions requested by Appellant Raffaldt at trial, the South Carolina

11

Supreme Court observed that, "[T]he charges requested by Raffaldt relate to *the various ways to commit distribution and possession*." *Raffaldt*, 456 S.E.2d at 394 (emphasis added) (citing S.C. Code Ann. § 44–53–370(a) and (d)(3) (1985 and Supp. 1993)). Thus, according to this statement in *Raffaldt*, 44-53-370(a)(1) defines different *ways* or *means*, as opposed to elements. *Id.* Furthermore, in *Harden v. State*, the South Carolina Supreme Court held, "Trafficking may be accomplished by *several means*, including conspiracy." 602 S.E.2d 48, 50 (S.C. 2004) (emphasis added). *See also State v. Ezell*, 468 S.E.2d 679, 681 (S.C. Ct. App. 1996) ("[T]rafficking in crack cocaine may be accomplished by a variety of criminal acts, including the knowing possession of a certain quantity of the drug, under § 44-53-375(C)."). Of course, different sections of the South Carolina drug statutes are at issue in *Raffaldt* and *Harden*. However, these statutes are undeniably closely related to section 44-53-375(B) in both language and purpose. In *Raffaldt*, the South Carolina Supreme Court stated that what distinguishes section 44-53-370 from the trafficking statute is the amount of drugs, not the criminal act: "It is the amount of cocaine, rather than the criminal act, which triggers the trafficking statute, and distinguishes trafficking from distribution and simple possession." 456 S.E.2d at 394. Moreover, the South Carolina Supreme Court has affirmed numerous times that "it is well settled that statutes dealing with the same subject matter are *in pari materia* and must be construed together, if possible, to produce a single, harmonious result." *Fullbright v. Spinnaker Resorts, Inc.*, 802 S.E.2d 794, 798 (S.C. 2017), *reh'g denied* (Aug. 22, 2017) (quoting *Beaufort County v. S.C. State Election Comm'n*, 718 S.E.2d 432, 435 (S.C. 2011)). Accordingly, the findings by the South Carolina Supreme Court in *Harden* and the South Carolina Court of Appeals in *Ezell*, that the trafficking statute lists several means—as opposed to elements or distinct crimes—provide

further weight to the conclusion that manufacture, distribute, dispense, deliver, and purchase are means and not elements under section 44-53-375(B).

The court notes that based on decisions of the South Carolina Supreme Court, under section 44-53-375(B), "manufactur[ing]" methamphetamine and cocaine base may stand alone from "distribut[ing], dispens[ing], deliver[ing], [and] purchas[ing]" methamphetamine and cocaine base. For example, in *Carter v. State*, the South Carolina Supreme Court found, "While the caption of this indictment refers to § 44-53-370, the plain language of the body of the indictment clearly notifies respondent that he is charged with manufacturing methamphetamine." 495 S.E.2d at 777 (S.C. 1998). Four years later in *State v. Walker*, the South Carolina Supreme Court held,

> Evidence sufficient to sustain a conviction for manufacturing marijuana may not always be sufficient to sustain a conviction for cultivating marijuana on the lands of another, even where there is no dispute the property belonged to someone other than the defendant. The manufacturing statute, S.C. Code Ann. § 44–53–370(a)(1) . . . when read in conjunction with the definitional statute, S.C. Code Ann. § 44–53–110 . . ., and *State v. Austin*, . . . 279 S.E.2d 374, 375 (1981), equates the act of "harvesting" with the offense of "manufacturing." The code, however, does not equate "harvesting" with "cultivating."

562 S.E.2d 313, 314 n.2 (2002). *See also Austin*, 279 S.E.2d at 375 ("Appellant questions the clarity and sufficiency of Section 44-53-370 in specifying the crime of 'manufacture.' Basically, South Carolina has adopted the Uniform Controlled Substances Act in Chapter 53 of Title 44, Code of Laws of South Carolina, 1976. In the definitional portion of the Act, Section 44-53-110, the terms 'manufacture' and 'production' are used interchangeably to denote the acts of 'planting, cultivation, growing or harvesting of a controlled substance.' We find nothing uncertain about either this statutory language or its application to the facts of this case.") However, resolving Defendant's objections does not require the court to determine whether manufacturing methamphetamine and cocaine base is a separate crime from distributing,

dispensing, delivering, and purchasing methamphetamine and cocaine base because Defendant was convicted of Possession with Intent to Distribute Cocaine Base. (ECF No. 48 at 10 ¶ 29.)

**B. Decisions from the Fourth Circuit**

At this point, the court has inquired enough. In answering the means/elements question, *Mathis* does authorize sentencing courts to look beyond the statute and state court decisions to "the record of a prior conviction itself," namely the indictment and jury instructions. 136 S. Ct. at 2256–57. However, *Mathis* holds this is only appropriate "if state law fails to provide clear answers." *Id.* *See also United States v. Diaz*, 865 F.3d 168, 177 (4th Cir. 2017) ("The government argues that under *Mathis* . . . we should 'peek at the record' to determine whether the statute is divisible. However, the Supreme Court only recommends this in the absence of 'clear answers' from case law and other sources." (citing *Mathis*, 136 S. Ct. at 2256)). The court finds that the South Carolina drug statutes and South Carolina case law "create sufficient consensus for [the court] to find the 'clear answer,'" without peeking at the record of Defendant's prior conviction. *Diaz*, 865 F.3d at 177. The "clear answer" is that under section 44-53-375(B), manufacture, distribute, dispense, deliver, and purchase are *means*, not elements.

The Fourth Circuit reached the opposite conclusion in *United States v. Sulton*, 740 F. App'x 45 (4th Cir. 2018), an unpublished decision.[3] In *Sulton*, the Fourth Circuit found that,

---

[3] The PSR also cites *United States v. Vinson*, 340 F. App'x 882 (4th Cir. 2009); *United States v. Marshall*, No. 16-4594, 2018 WL 4150855 (4th Cir. Aug. 29, 2018); *United States v. Rhodes*, 736 F. App'x 375, 379 (4th Cir. 2018), and the Fifth Circuit's decision in *United States v. Rodriguez-Negrete*, 772 F.3d 221 (5th Cir. 2014), as support for their position. (ECF No. 48-1 at 4–6.) *Vinson* does not analyze the means/elements question and was decided before *Mathis*. *See Vinson*, 340 F. App'x at 883 ("Vinson claims that because the South Carolina statute under which he was convicted also criminalizes the purchase of drugs, the district court needs to look beyond the statute to evaluate Vinson's conduct. We disagree. Vinson actually pleaded guilty to an offense that is enumerated in § 924(e)(2)(A)(ii)."). *Rhodes* analyzes a different South Carolina drug statute, not section 44-53-370. *See Rhodes*, 736 F. App'x at 379 (assuming, for purposes, of the appeal that S.C. Code Ann. § 44-53-445(A) (2003) is divisible). And, the Fifth

> the statute is divisible because, on its face, it criminalizes multiple, different actions taken with respect to methamphetamine, and nothing in the statutory text states or suggests that the enumerated actions are alternative ways to commit an element of a single offense rather than alternative offenses. *See United States v. Rodriguez-Negrete*, 772 F.3d 221, 224-27 (5th Cir. 2014) (applying modified categorical approach to S.C. Code Ann. § 44-53-370(a)(1) (2018), which is phrased similarly to and referenced in § 44-53-375(B) ); *State v. Brown*, . . . 461 S.E.2d 828, 831 ([S.C. Ct.] App. 1995) (noting that distribution of crack cocaine and possession with intent to distribute crack cocaine are separate offenses each criminalized by § 44-53-375(B) ).

740 F. App'x at 46. However, this is a departure from *Mathis*. In *Mathis*, the Supreme Court found it particularly important to the divisibility analysis whether the statutory alternatives carry different punishments. *See Mathis*, 136 S. Ct. at 2256 ("Likewise, the statute on its face may resolve the issue. If statutory alternatives carry different punishments, then under *Apprendi* they must be elements."). As explained above, under section 44-53-375(B), manufacture, distribute, dispense, deliver, and purchase *do not* carry different punishments, which the *Sulton* court did not consider in its analysis. *Sulton*, 740 F. App'x at 46.

Moreover, in *Sulton*, the Fourth Circuit cited one South Carolina case, *State v. Brown*, 461 S.E.2d 828, 831 (S.C. Ct. App. 1995), as authority. In *Brown*, the South Carolina Court of Appeals held,

> We wish to emphasize that there is no prohibition against the contemporaneous prosecution by the State for both possession with intent to distribute and

---

Circuit's decision in *Rodriguez-Negrete*, in addition to not being binding on this court, analyzes a different South Carolina drug statute, does not directly answer the means/elements questions, and was also decided before *Mathis*. *See Rodriguez-Negrete*, 772 F.3d at 227 ("Because the statute of Rodriguez's conviction criminalizes drug distribution offenses as well as the mere purchase of drugs—the latter not necessarily a drug trafficking offense—the statute alone would not be sufficient and determinative to support Rodriguez's sentence. Under the modified categorical approach, we may determine the offense of Rodriguez's conviction by consulting a limited class of documents approved by the Supreme Court in *Shepard v. United States*."). Therefore, instead of reviewing all of those decisions, this court will only examine the Fourth Circuit's decision in *United States v. Sulton*, 740 F. App'x 45 (4th Cir. 2018).

> distribution of crack cocaine and the related school charges where, like this case, they arise out of the same conduct. As in *Ball,* if the trial judge is satisfied there is evidence to go to the jury on all charges, the judge must instruct the jury as to each. However, where the alleged possession with intent to distribute and distribution arise from the same conduct, such that the possession would merge into the distribution, if the jury so finds, then the trial judge should instruct the jury to convict on one charge or the other, but not both.

461 S.E.2d at 832. As explained above, this court finds that under section 44-53-375(B), manufacturing, distributing, dispensing, delivering, or purchasing methamphetamine or cocaine base is a distinct crime from possessing methamphetamine or cocaine base with the intent to manufacture, distribute, dispense, deliver, or purchase methamphetamine or cocaine base. While *Brown* confirms that *purchasing methamphetamine or cocaine base* is a distinct crime from *possessing methamphetamine or cocaine base with the intent to distribute it*, *Brown* does not answer whether *purchasing* methamphetamine or cocaine base is a distinct crime from *distributing* methamphetamine or cocaine base, or *manufacturing* methamphetamine or cocaine base, and so on, and so on. *See id*.

Finally, because *Sulton* is an unpublished opinion, it is not binding on this court. *Minor v. Bostwick Labs., Inc.*, 669 F.3d 428, 433 n.6 (4th Cir. 2012) ("Unpublished decisions are also not binding upon us."); *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir. 2006) ("[W]e ordinarily do not accord precedential value to our unpublished decisions. Indeed, those decisions have no precedential value, and they are 'entitled only to the weight they generate by the persuasiveness of their reasoning.'" (quoting *Hupman v. Cook*, 640 F.2d 497, 501 & n. 7 (4th Cir. 1981))); *United States v. Ruhe*, 191 F.3d 376, 392 (4th Cir. 1999) ("Unpublished opinions are not binding precedent in this circuit."). Accordingly, none of the Fourth Circuit's unpublished decisions relied upon by the PSR mandate how Defendant's objections should be resolved. This court remains convinced that section 44-53-375(B) sets forth alternative means and, therefore, must apply the categorical approach.

C. **Application of the Categorical Approach**

Defendant pleaded guilty to "possession with intent to distribute, dispense, or deliver methamphetamine or cocaine base" under section 44-53-375(B) of the South Carolina Code (2017). (*See* ECF No. 48 at 10 ¶ 29.) Because this court finds distribute, dispense, or deliver methamphetamine or cocaine base is a separate crime under section 44-53-375(B), contrary to Defendant's assertion, this portion of the statute, by its very language, does not prohibit the purchase of methamphetamine or cocaine base. *See id.* Accordingly, the elements of possession with intent to distribute, dispense, or deliver methamphetamine or cocaine base under section 44-53-375(B) are narrower than that of a controlled substance offense under U.S.S.G. § 4B1.2.[4] *Compare* U.S.S.G. § 4B1.1(a) *with* S.C. Code Ann. 44-53-375(B) (2017). Therefore, the categorical approach applies. *See Mathis*, 136 S. Ct. at 2257 (stating that under the categorical approach, "Courts must ask whether the crime of conviction is the same as, or narrower than, the relevant generic offense"). As previously explained, under the categorical approach, the court "compar[es] the elements of the underlying offense to the federal definition." *Walker*, 858 F.3d at 198. Only if the elements of the underlying offense "sweep[] more broadly" than the federal definition, "a conviction under that law cannot count" as a controlled substance offense. *Descamps*, 570 U.S. at 261. Under these circumstances, when the elements of the statute of conviction are narrower than the federal definition, "the categorical approach needs no help from its modified partner." *Descamps*, 570 U.S. at 265. *See Mathis*, 136 S. Ct. at 2257 (stating that under the categorical approach, "Courts must ask whether the crime of conviction is the same as,

---

[4] Under section 44-53-110(17) of the South Carolina Code (2017), "distribute" means "means to deliver (other than by administering or dispensing) a controlled substance." Thus, as the word "deliver" is used in the definition of "distribute,"—and Defendant made no objections concerning the term "deliver"—the court declines to address whether section 44-375(B)'s use of the word "deliver" makes it broader than the federal definition of a controlled substance.

17

or narrower than, the relevant generic offense"). Therefore, because section 44-53-375(B) of the South Carolina Code Ann. (2017) is narrower than the definition of a "controlled substance offense" under U.S.S.G. § 4B1.2(b), Defendant's conviction under that law can give rise to an enhanced sentence under U.S.S.G. § 4B1.1(a), and the court overrules Defendant's first objection. As the court has found the modified categorical approach does not apply, the court overrules Defendant's second objection—that sentencing sheets are not appropriate *Shepard* documents—as moot.

### III. CONCLUSION

The court overrules Defendant's first objection. As a result of finding the modified categorical approach does not apply to convictions under section 44-53-375(B) of the South Caroline Code Ann. (2017), the court overrules Defendant's second objection as moot.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

December 14, 2018
Columbia, South Carolina